**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN IMMIGRATION COUNCIL,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 11-1971 (JEB)** |
| **UNITED STATES DEPARTMENT OF HOMELAND SECURITY,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

After sitting on a fairly standard Freedom of Information Act request by Plaintiff

American Immigration Council for almost a year, Defendant U.S. Citizenship and Immigration

Services (a component of the Department of Homeland Security, the other Defendant) produced

a response riddled with errors. The affidavit meant to demonstrate the adequacy of USCIS's

search for responsive records discloses almost nothing about the search itself. The Vaughn

index, moreover, which should justify all withholdings of documents, oscillates between sloppy

and misleading. After *in camera* review, the Court concludes that two-thirds of the withheld

records contested by the Council should have been largely or wholly released. FOIA cases count

on agencies to do their jobs with reasonable diligence. USCIS must do better.

**I.      Background**

FOIA requires that "each agency, upon any request for records which (i) reasonably

describes such records and (ii) is made in accordance with published rules . . . , shall make the

records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). The Act makes exceptions

for certain categories of records, however, which are described as FOIA exemptions.  See 5

U.S.C. § 552(b).

In March 2011, the Council submitted this FOIA request about the role of counsel in

immigration proceedings to USCIS:

> AIC requests any and all records which have been prepared, received, transmitted, collected and/or maintained by the U.S. Department of Homeland Security and/or U.S. Citizenship and Immigration Services (USCIS), whether issued or maintained by USCIS Headquarters offices, regional offices, district offices, field offices and/or any other organizational structure, and which relate or refer in any way to any of the following:
> - Attorneys' ability to be present during their clients' interactions with USCIS;
> - What role attorneys may play during their clients' interactions with USCIS;
> - Attorney conduct during interactions with USCIS on behalf of their clients;
> - Attorney appearances at USCIS offices or other facilities.

Compl., Exh. A (Letter from Emily Creighton, Am. Immigr. Council, to FOIA Office, USCIS

(March 14, 2011)), at 1 (footnote omitted).  The request "include[d], but [was] not limited to"

sixteen specific types of records.  Id.; see, e.g., id. at 2 ("[(6)] Guidance or any information

obtained by the agency regarding circumstances under which an attorney may accompany a

client to an interview regarding an N-400, Application for Naturalization, or what role the

attorney may play during such questioning").

After eight months without receiving a determination, the Council filed suit in this Court.

See 5 U.S.C. § 552(a)(6) (agency normally must make initial determination in 20 days, with

another 20 days allotted for administrative appeal).  Three months later, USCIS finally

responded – releasing 455 pages in full, 418 in part, and withholding 1169 in full.  See Mot.,

Exh. G (Letter from Jill A. Eggleston, Dir., FOIA Operations, USCIS, to Creighton (Feb. 6,

2012)).

USCIS has now filed a combined Motion to Dismiss (asserting partial mootness) and

Motion for Summary Judgment (defending the sufficiency of the response itself).  The Council

contests only the Motion for Summary Judgment.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.

See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case,

the Court may grant summary judgment based solely on information provided in an agency's

affidavits or declarations when they "describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)

(citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith,

which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks omitted).

## III.    Analysis

Because the Council maintained its original Complaint even after USCIS responded to

the FOIA request, it falls to the Court to prune away the stale grievances.  As the Council agrees,

the Complaint's second cause of action – "Violation of the Administrative Procedure Act (APA)

for Failure to Timely Respond to Request for Agency Records," Compl. at 6 – must now be

dismissed as moot.  See Opp. at 2 n.1.  For the records released in full and the portions of records

released in part, moreover, the Council's FOIA claim is now moot.  See Murphy v. Hunt, 455

U.S. 478, 481 (1982) (per curiam) ("a case becomes moot when the issues presented are no

longer live") (internal quotation marks omitted).  Any complaints relating to those records must

also be dismissed.  Finally, while USCIS's Motion included a lengthy defense of its Exemption 6

withholdings, the Council ignores Exemption 6 in its Opposition.  The Council has therefore

forfeited any challenge to these withholdings, and the Court will grant USCIS summary

judgment as to the portions of records withheld under that Exemption.  See Coal. for Responsible

Regulation, Inc. v. EPA, 684 F.3d 102, 136 (D.C. Cir. 2012).

Just two disputes remain.  First, the Council complains that USCIS has not demonstrated

that it conducted an adequate search.  Second, the Council objects to USCIS's application of

Exemption 5 and claims that many documents withheld under that Exemption should be turned

over to the Council.  The Court takes each issue in turn.

A.  Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original).  The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail."  Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  Id.  "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  Truitt, 897 F.2d at 542.

Here, to demonstrate the adequacy of its search, USCIS offers a declaration by Jill Eggleston, Assistant Center Director of USCIS's FOIA Unit.  See Reply, Exh. 1 (Second Decl. of Jill A. Eggleston). She explains that USCIS broke its search here into two steps.  First, an officer from USCIS's central FOIA office selected which program offices within USCIS to ask for responsive records.  Second, the chosen program offices independently searched for responsive records, turning anything that they deemed responsive over to the FOIA officer.  The Council challenges both steps.

1. *Selection of Program Offices*

Eggleston's Declaration focuses primarily on the first step.  Because the Council's FOIA request raised "complex" issues, the FOIA Unit assigned the request to its "Significant Interest Team."  Id., ¶¶ 8-9.  The Significant Interest Team then "identif[ied] all USCIS program offices potentially possessing records responsive to the request" by "consult[ing] a variety of sources containing organizational and operational information about the agency and its various components, such as a reference guide entitled, USCIS Functional Profiles."  Id., ¶ 9 & n.2; see also id., ¶ 11.  "Essentially, the focus of a given FOIA request is compared to the various USCIS components' assigned areas of responsibility in search of matching, comparable and/or compatible subject matters.  The FOIA request is then sent to any USCIS component charged with responsibilities encompassing the FOIA requester's stated area(s) of interest."  Id., ¶ 9 n.2.

For the Council's FOIA request here, the Significant Interest Team concluded that five program offices might have responsive records: the Service Center Operations; the Office of Policy and Strategy; the Field Operations Directorate; the Refugee, Asylum, and International Operations Directorate; and the Office of Chief Counsel.  See id., ¶ 12.  For each of those offices, Eggleston's Declaration explains the Significant Interest Team's thinking.  See, e.g., id., ¶ 13 (The Service Center Operations "is responsible for the direct oversight and support of USCIS service centers located within the United States that adjudicate, manage and deliver immigration decisions and benefits.  The [Significant Interest] team determined that it might be possible that SCOPS had issued guidance to staff on dealing with attorneys and other representatives of individuals seeking immigration decisions and benefits."); see also id., ¶¶ 14-17 (giving similarly detailed explanations for the other four offices).

Despite those details, the Council objects that the Declaration explains only why the five chosen offices made the cut – not why USCIS passed over many other offices. The Fraud Detection and National Security Directorate, for example, visits worksites to verify information in visa petitions, and the Council claims that those visits can give rise to access-to-counsel issues. See Opp. at 7. Indeed, the Council submits notes from a USCIS meeting that discusses the role of counsel in such worksite visits (although it is not clear whether the Directorate was involved in the meeting or whether its files would include the notes). See Opp., Decl. of Beth Werlin, Exh. B (USCIS, Questions and Answers: USCIS American Immigration Association (AILA) Meeting (Oct. 27, 2009)), at 10-13.

While the issue is close, the Court concludes that Eggleston provided a sufficient explanation on this point. The D.C. Circuit has explained that, "[a]t the very least," an agency must "explain in its affidavit that no other record system was likely to produce responsive documents." Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990) (emphasis added). Here, USCIS has cleared that bar. USCIS's general methodology – comparing the FOIA request to program offices' functions deduced from "sources containing organizational and operational information about the agency and its various components, such as a reference guide entitled, USCIS Functional Profiles," Eggleston Decl., ¶ 9 n.2 – is sound. USCIS could justifiably conclude that the Fraud Detection and National Security Directorate probably did not hold responsive records because its functions seem far removed from access-to-counsel issues. See Fraud Detection and National Security Directorate, U.S. CITIZENSHIP & IMMIGR. SERVICES, http://www.uscis.gov/portal/site/uscis (follow "About Us" link; then follow "Directorates and Program Offices" link; then follow "Fraud Detection and National Security" link) (last visited Nov. 27, 2012). As to the actual meeting notes submitted by the Council, "the issue to be

resolved is not whether there might exist any other documents possibly responsive to the request,

but rather whether the <u>search</u> for those documents was <u>adequate</u>." <u>Weisberg</u>, 745 F.2d at 1485

(emphasis in original).  USCIS's FOIA office had no way to know about this meeting, so the

Significant Interest Team was not unreasonable in excluding the Directorate.

2.  <i>Searches by Program Offices</i>

Once the searches moved to the program offices, however, the Declaration's detail thins.

Eggleston explains that each chosen program office "was tasked to conduct a search for

documents responsive to AIC's FOIA request."  Eggleston Decl., ¶ 12.  She adds that each office

"conduct[ed] the search in the manner it deem[ed] most appropriate and best calculated to locate

records responsive to the specific FOIA request."  <u>Id.</u>

And that's it.  The Declaration says nothing about what kinds of records the offices keep,

which records or databases the offices searched through, or how the offices conducted their

searches.  Indeed, Eggleston herself seems not to know what the chosen program offices did after

receiving the requests.  The Declaration says only that the chosen offices turned responsive

records over to the Significant Interest Team.  <u>See id.</u>, ¶¶ 13-18.

Eggleston's Declaration gives this Court no way to know if the chosen offices conducted

adequate searches with reasonable methods.  Over and over again, the D.C. Circuit has told

agencies that this type of conclusory declaration will not do.  <u>See, e.g.</u>, <u>Morley v. CIA</u>, 508 F.3d

1108, 1122 (D.C. Cir. 2007) ("[A]fter describing how a single FOIA request must be divvied up

between multiple component units within the CIA, Dorn states that 'each component must then

devise its own search strategy, which includes identifying which of its records systems to search

as well as what search tools, indices, and terms to employ.'  But the two brief paragraphs in the

Declaration explaining the search itself provide no information about the search strategies of the

8

components charged with responding to Morley's FOIA request.  Dorn merely identifies the

three directorates that were responsible for finding responsive documents without identifying the

terms searched or explaining how the search was conducted in each component. . . .

Consequently, the Declaration's terse treatment of the CIA's efforts to locate documents that

were responsive to Morley's FOIA request lacks the detail necessary to afford a FOIA requester

an opportunity to challenge the adequacy of the search and to allow the district court to

determine if the search was adequate in order to grant summary judgment.") (citations, brackets,

and some internal quotation marks omitted); Steinberg, 23 F.3d at 551-52 ("While the document

describes in general how the EOUSA processed appellant's FOIA request, it fails to describe in

any detail what records were searched, by whom, and through what process."); Oglesby, 920

F.2d at 68 ("The affidavit does not show, with reasonable detail, that the search method, namely

searching the Central Records, was reasonably calculated to uncover all relevant documents.

Nor does the affidavit identify the terms searched or explain how the search was conducted. . . .

Because State's affidavit did not adequately describe the agency's search, summary judgment on

the adequacy of the search was improper."); Church of Scientology of Cal. v. IRS, 792 F.2d 146,

151 (D.C. Cir. 1986) ("Summary judgment on this point would require an affidavit reciting facts

which enable the District Court to satisfy itself that all appropriate files have been searched, i.e.,

that further searches would be unreasonably burdensome.  Such an affidavit would presumably

identify the searched files and describe at least generally the structure of the agency's file system

which makes further search difficult."); Weisberg v. Dep't of Justice, 627 F.2d 365, 371 (D.C.

Cir. 1980) ("Unlike earlier cases in which summary judgment was predicated in part on a finding

that the document search was complete, the agency affidavits now before us do not denote which

files were searched or by whom, do not reflect any systematic approach to document location,

and do not provide information specific enough to enable Weisberg to challenge the procedures utilized.  Under these circumstances, issues genuinely existed as to the thoroughness of the FBI search, and consequently summary judgment was improper.") (footnote omitted).

The Court cannot yet say whether the search was adequate, but the Eggleston Declaration certainly was not.  The Court will therefore deny USCIS's motion for summary judgment with respect to the adequacy of the search.  Such motion may be renewed upon the submission of sufficiently detailed affidavits.[1]

B.  Exemption 5

After sorting through the responsive documents identified by program offices, USCIS withheld many of them under FOIA Exemption 5.  Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  The "inter-agency or intra-agency memorandums or letters" can include documents from private parties working with agencies if the private parties play a role similar to agency personnel.  See Nat'l Inst. of Military Justice v. Dep't of Def., 512 F.3d 677, 680-87 (D.C. Cir. 2008).  The Supreme Court has construed Exemption 5 "to exempt those documents, and only those documents, normally privileged in the civil discovery context."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975).  "The three primary, most frequently invoked privileges that have been held to be incorporated into Exemption 5 are the deliberative process privilege (referred to by some courts as 'executive privilege'), the attorney work-product privilege, and the attorney-client privilege."  DEP'T OF JUSTICE, GUIDE TO THE FREEDOM OF INFORMATION ACT 359 (2009 ed.) (footnotes omitted).

---

[1] The Council also objects to summaries of the FOIA request that the Significant Interest Team sent to each chosen program office.  Without knowing how the program offices conducted their searches, the Court cannot assess the impact of those summaries.  For now, the question remains open.

Through its Vaughn index, USCIS claims all three privileges – in varying combinations –

in its withholdings.  A Vaughn index briefly describes each withheld record and explains why

the record was withheld.  See Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).  USCIS

first produced a 122-page Vaughn index, see Mot., Exh. H (Vaughn Index), then submitted an

"amended" 93-page Vaughn index with its reply brief.  See Reply, Exh. 2 (1st Amended Vaughn

Index).

While the Council broadly opines that "most – if not all" – of the entries in the Vaughn

index are too conclusory, Opp. at 14, it "specifically contests the applicability of the exemption"

for only fifteen of the withheld records.  Id. at 15.  Because USCIS's explanations in the Vaughn

index called its application of Exemption 5 into doubt, the Court ordered USCIS to produce

those fifteen contested records (consisting of single documents or groups of similar documents)

for in camera inspection.  See Minute Order, Nov. 9, 2012.

In conducting its in camera review, the Court relied for the most part on the amended

Vaughn index.  Where the amended Vaughn index contained obvious mistakes, however, the

Court looked to the original Vaughn index.[2]  The D.C. Circuit has emphasized that such errors

are unacceptable:

> The purpose of the Vaughn index is to permit adequate adversary
> testing of the agency's claimed right to an exemption, and those
> who contest denials of FOIA requests – who are, necessarily, at a

---

[2] Three notable errors in the records that the Court reviewed in camera:

First, the original description of and justification for withholding Record 6 disappeared in the amended Vaughn index, leaving a blank line.  See 1st Amended Vaughn Index at 65.  The Court filled in the blanks with the justifications that USCIS offered in the original Vaughn index.

Second, while USCIS initially relied on the deliberative-process privilege under Exemption 5 to withhold Record 13, the amended Vaughn index asserted only Exemption 6.  It is clear from a glance at the document that Exemption 6 is way off base; indeed, the top of each page of the Record says "PAGE WITHHELD PURSUANT TO (b)(5)."  Again, the Court used the original Vaughn index for this Record instead of the amended one.

Third, the Vaughn indices (both original and amended) describe Record 13 as a letter spanning FOIA response pages 1981-83.  Yet the three-page document produced to the Court has two pages of letters and a page of internal minutes of a meeting.  These pages are thus not part of the same document.  Because the documents produced for in camera inspection do not give the FOIA page numbers, it is unclear if the Vaughn index is off or if the wrong page was produced for in camera review.

> disadvantage because they have not seen the withheld documents –
> can generally prevail only by showing that the agency's <u>Vaughn</u>
> index does not justify withholding information under the
> exemptions invoked.  FOIA litigants are entitled to assume that the
> agency's <u>Vaughn</u> index is accurate in every detail.  And so is the
> court.  There is no excuse for submitting a <u>Vaughn</u> index that
> contains errors, even minor ones.  We expect agencies to ensure
> that their submissions in FOIA cases are absolutely accurate.

<u>Schiller v. NLRB</u>, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (citation and internal quotation marks omitted), <u>abrogated on other grounds</u>, <u>Milner v. Dep't of Navy</u>, 131 S. Ct. 1259 (2011).

Yet the errors in the form of the index turn out to be the least of USCIS's woes here. Having now examined the withheld records, the Court concludes that most of the challenged Exemption 5 withholdings were improper, although the reason that USCIS was wrong changes with each record.  The variety in errors suggests that USCIS, although it invoked Exemption 5 often, did not grasp even the basic points of this Exemption.

## 1. *Deliberative-Process Privilege*

The deliberative-process privilege shields internal agency "advisory opinions, recommendations and deliberations" in order to "protect[ ] the decision making processes of government agencies."  <u>Sears, Roebuck & Co.</u>, 421 U.S. at 150 (internal quotation marks omitted).  To qualify under this privilege, a record must meet two requirements.  First, it must be predecisional – *i.e.*, "antecedent to the adoption of an agency policy."  <u>Jordan v. Dep't of Justice</u>, 591 F.2d 753, 774 (D.C. Cir. 1978) (*en banc*) (emphasis omitted), <u>overruled in part on other grounds</u>, <u>Crooker v. ATF</u>, 670 F.2d 1051 (D.C. Cir. 1981) (*en banc*).  Even when an agency subsequently makes a final decision on the issue discussed in the record, the record remains predecisional if it was produced before that final decision.  <u>See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill</u>, 443 U.S. 340, 360 (1979).  Second, a record must be deliberative – *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions

on legal or policy matters." <u>Vaughn v. Rosen</u>, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975). "A document that does nothing more than explain an existing policy cannot be considered deliberative." <u>Public Citizen, Inc. v. OMB</u>, 598 F.3d 865, 876 (D.C. Cir. 2010).

"Exemption 5, properly construed, calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." <u>Sears, Roebuck & Co.</u>, 421 U.S. at 153 (internal quotation marks omitted). A "strong theme" of this Circuit's decisions on the deliberative-process privilege "has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 867 (D.C. Cir. 1980). Yet USCIS repeatedly casts records as predecisional when they actually convey what the Agency's policymakers have decided. <u>See</u> <u>id.</u> at 868 ("a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made").

First up is Record 1, which comprises five versions of PowerPoint slides used in presentations by USCIS's Office of the Chief Counsel to train agency employees about interacting with private attorneys. These training slides are neither predecisional nor deliberative. A training is not a step in making a decision; it is a way to disseminate a decision already made. Indeed, by teaching USCIS employees to go forth and apply the information in the slides, USCIS entrenched its policies. The deliberative-process privilege thus cannot protect

these slides from disclosure.  (USCIS also asserts that the attorney-client and attorney work-product privileges protect Record 1.  The Court considers those privileges below.)

Record 3 is a series of e-mails between USCIS employees and the private American Immigration Lawyers Association's liaison to USCIS.  (The Vaughn index mischaracterizes the document by concealing that an outsider – the liaison – was part of the exchange.)  The e-mail chain begins with the liaison asking USCIS employees to clarify specific agency policies and practices, and follows with the employees' responses, which are meant to be distributed to lawyers in AILA.  Most of these e-mails are not "inter-agency or intra-agency memorandums or letters," flunking the threshold requirement of Exemption 5.  See 5 U.S.C. § 552(b)(5).  E-mails between a private liaison and an agency could satisfy that threshold requirement if the agency solicited advice from the liaison, using the liaison as a consultant.  See Nat'l Inst. of Military Justice, 512 F.3d at 687.  When the liaison initiates the contact, however, and communicates "with [her] own, albeit entirely legitimate, interests in mind" – as the liaison did here – the e-mails cannot be considered an inter-agency or intra-agency communication.  Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 12 (2001).  Even aside from the threshold problem, moreover, all of these e-mails (including the few in the chain that leave off the private liaison) deal with USCIS's existing policy.  As these employees are not considering new policies, their discussions are neither deliberative nor predecisional.  For each of these reasons, Record 3 cannot be withheld under Exemption 5.

Next is Record 5, a document of unclear provenance and purpose.  USCIS describes this three-page document as "Internal USCIS policy on interviews and interview techniques."  1st Amended Vaughn Index at 88.  In places the document seems to be directed to USCIS adjudication officers (who conduct immigration interviews), while in other places the document

seems like instructions to attorneys appearing before the adjudication officers.  Either way, the document again conveys existing policies instead of searching out new policies.  USCIS asserts that Record 5 is privileged because "it discusses policy and techniques to be utilized during interviews with benefits seekers."  Id. at 89.  That explanation, however, has nothing to do with the deliberative-process privilege.  Because Record 5 is neither predecisional nor deliberative, it cannot be withheld under Exemption 5.

Record 6 consists of two documents given to immigrants by USCIS.  The first – titled "Important Information for Applicants and Petitioners: Know Your Rights – Protect Yourself from Imposters" – lists lawyers who are ineligible to appear before USCIS (presumably because they have been disciplined in the past).  The second warns immigrants to know their rights and to use accredited counsel.  Again, because both of these documents were distributed to the public, they (1) are not intra-agency or inter-agency records, thus failing Exemption 5's threshold requirement, and (2) represent settled USCIS policy, not fluid policy that still must congeal. USCIS offers no defense for withholding the second document, but argues that the first should be protected because the list of attorneys is no longer current.  But just as predecisional documents do not lose protection when the agency subsequently reaches a final decision, see Fed. Open Mkt. Comm., 443 U.S. at 360, a document embodying a then-final decision does not gain protection when it becomes outdated.  Record 6 should be disclosed.

Record 8 is an "Interoffice Memorandum" concerning access to agency space and information from the USCIS District 3 Director to all District 3 employees.  As the Coastal States court incisively observed, "[A] document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made."  617 F.2d at

868.  Record 8 falls precisely into that latter camp.  The memo decrees policy; it signals no

interest in employee reactions.  Because the memo is neither predecisional nor deliberative,

USCIS cannot withhold Record 8 under the deliberative-process privilege.[3]

Record 10 includes a series of e-mails parallel to those in Record 3, with the same USCIS

employees discussing the same topic with the same private liaison from AILA.  Except for the

first two e-mails on page 1904 (time stamped February 29, 2008, at 8:20 a.m. and February 28,

2008, at 9:38 a.m.), which involve solely agency employees discussing an unsettled policy, pages

1904-06 of Record 10 are like Record 3 and cannot be withheld under Exemption 5.

Record 12 presents the first close question.  An e-mail from a USCIS "Supervisory

Adjudications Officer" to USCIS employees (who the sender appears to supervise), Record 12

instructs one employee to post an attached written notice at the reception window and to

implement the notice's policy immediately.  On the one hand, this seems to be another document

from superior to subordinate, meaning that it is "more likely to contain instructions to staff

explaining the reasons for a decision already made."  Coastal States, 617 F.2d at 868.  By

including a long list of employees on the e-mail, moreover, the supervisor seems to aim to

inform many employees (not just the one in charge of posting the notice) about the new policy.

On the other hand, because the e-mail precedes the posting, arguably the decision has yet to

reach its final culmination.  The e-mail, moreover, encourages employees to contact the

supervisor with any questions about the policy.  At the end of the day, the Court concludes that

even if some facts suggest that the e-mail is predecisional, it is not deliberative.  There is no hint

that the supervisor is still weighing her options or wants feedback from the employees; asking if

---

[3] In a footnote in its reply brief, USCIS suggests that Exemption 7(F) would justify this withholding.  See Reply at 17 n.11.  The Court responds in like manner.  USCIS has forfeited this argument thrice over by failing to assert this ground in its Vaughn index, see SEC v. Chenery Corp., 318 U.S. 80, 87 (1943); by failing to raise the argument in its opening brief, see Coal. for Responsible Regulation, 684 F.3d at 136; and by summarily making the argument in a footnote.  See United States v. Saani, 650 F.3d 761, 763 n.* (D.C. Cir. 2011).

employees have <u>questions</u> is not the same as asking if they have <u>suggestions</u>.  Record 12, therefore, falls outside the bounds of the deliberative-process privilege.

Returning to more familiar terrain, Record 13 has two versions of letters given to new adjudication officers selected to interview immigrants, introducing the training program they will undergo and providing basic interview tips.  This is another communication from superior to subordinate teaching the officers about settled USCIS policies.  It is neither predecisional nor deliberative.  Except for the meeting minutes that slipped in with the letters, <u>see</u> <u>supra</u> note 2, which are covered by the deliberative-process privilege, Exemption 5 cannot protect Record 13.

Record 15 is a two-page 1997 memorandum from the Deputy Director of then-INS's asylum division to all asylum directors, supervisory officers, and officers.  The memo gives guidance on what role consultants can play during credible-fear interviews.  USCIS argues that the memo is predecisional because it states that INS is "developing further guidance on working with consultants and representatives" that "will follow shortly."  "More guidance soon," however, does not undercut the finality of the guidance already given.  Although Charles Dickens published <u>David Copperfield</u> in monthly serialization, each installment fixed the chapters it published.  As one would expect from a widely distributed memo from a higher-up, the memo here sets out definitive agency policies.  Because the memo is neither predecisional nor deliberative, Record 15 cannot qualify for withholding under Exemption 5.

Despite this inauspicious track record, a handful of USCIS's withholdings were actually correct.  Record 4 – a draft of a memo from a USCIS legislative counsel to USCIS's Chief Counsel on the legality of certain USCIS policies – falls under the deliberative-process privilege.  (If USCIS had asserted it, Record 4 also could have been withheld under the attorney work-product privilege.)

Record 7 is an e-mail exchange between agency employees trying to figure out a policy

for disruptive attorneys.  Similarly, Record 9 consists of two e-mail chains with agency

employees trying to decide how to answer problematic parole requests.  Record 10 has two

comparable e-mail exchanges with USCIS employees: one of responses to a request for agenda

items for an agency meeting, and the other discussing issues that emerged from that meeting.

(As noted above, Record 10 also includes an e-mail exchange with an outside liaison that must

be mostly disclosed, so USCIS gets only partial credit for withholding Record 10.)  Record 11

includes a single withheld e-mail between USCIS employees on clarifying a new USCIS policy.

All of these e-mail exchanges are deliberative and appear to be predecisional, and they thus fall

under Exemption 5.

Record 14, finally, is a jumble of internal minutes from various meetings that USCIS held

with AILA, a private association.  Because AILA appears to have been presenting complaints

about the adjudication process in these meetings at the behest of USCIS, the minutes qualify as

intra-agency or inter-agency records under Exemption 5.  See Nat'l Inst. of Military Justice, 512

F.3d at 687.  And because the minutes focus on the problems that AILA pointed out interspersed

with responses that USCIS is considering, the minutes are predecisional and deliberative, and

were thus justifiably withheld.

### 2. *Attorney Work-Product Privilege*

The attorney work-product privilege protects "documents and tangible things that are

prepared in anticipation of litigation or for trial" by an attorney.  Fed. R. Civ. P. 26(b)(3); see

also Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997).  "[I]t is essential that a lawyer

work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

their counsel.  Proper preparation of a client's case demands that he assemble information, sift

what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan

his strategy without undue and needless interference."  Hickman v. Taylor, 329 U.S. 495, 510-11

(1947).

As in most work-product cases, the disputes here revolve around whether documents

were "prepared in anticipation of litigation."  To qualify, the document must have been prepared

or obtained "because of" the threat of litigation, meaning that "the lawyer must at least have had

a subjective belief that litigation was a real possibility, and that belief must have been objectively

reasonable."  In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (citation omitted).  The

"litigation" anticipated by the work product can "include proceedings before administrative

tribunals if they are of an adversarial nature."  8 CHARLES ALAN WRIGHT ET AL., FEDERAL

PRACTICE AND PROCEDURE § 2024, at 502-03 (3d ed. 2010).

A document is prepared in anticipation of litigation when litigation is "foreseeable,"

"even if no specific claim is contemplated."  Schiller, 964 F.2d at 1208.  Yet the "mere

possibility" of litigation is not enough.  Coastal States, 617 F.2d at 865.  "[I]f the agency were

allowed to withhold any document prepared by any person in the Government with a law degree

simply because litigation might someday occur, the policies of the FOIA would be largely

defeated."  Senate of P.R. v. Dep't of Justice, 823 F.2d 574, 587 (D.C. Cir. 1987) (internal

quotation marks omitted).  The Circuit has drawn a line between "neutral, objective analyses of

agency regulations" and "more pointed documents" that recommend "how to proceed further

with specific investigations" or "advise the agency of the types of legal challenges likely to be

mounted against a proposed program, potential defenses available to the agency, and the likely

outcome."  Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 127 (D.C. Cir. 1987)

(citing Coastal States, 617 F.2d 854).  Neutral, objective analysis is "like an agency manual,

fleshing out the meaning of the" law, and thus is not prepared in anticipation of litigation.  Id.
More pointed advice, however, anticipates litigation.  See id.

Here, USCIS claims the work-product privilege in its Vaughn index for only two records.
Record 1, discussed above, is PowerPoint slideshow for presentations by USCIS's Office of the
Chief Counsel to teach USCIS employees how to interact with private attorneys during USCIS
proceedings before adjudicators.  While those slides are literally "in anticipation of litigation" –
the agency proceedings before adjudicators – they do not anticipate litigation in the manner that
the privilege requires.  The attorneys giving the training were not worrying about litigation
ensuing from any "particular transaction."  In re Sealed Case, 146 F.3d at 885.  Nor were they
assembling information, sifting through facts, preparing legal theories, or planning strategy for
USCIS's case.  See Hickman, 329 U.S. at 510-11.  Instead, the lawyers prepared the slides to
convey routine agency policies.  The fact that those policies happen to apply in agency litigation
does not shield the slides from disclosure.  Record 1 is not attorney work product.

Record 2 is a harder call.  It is a three-page 1992 memorandum (actually, three copies of
the memorandum) from INS's General Counsel to INS's Office of International Affairs.  The
memo resolves whether an INS regulation creates a right to counsel for people seeking admission
as refugees.  Without examining the memo, it is not obvious whether Record 2 is a "more
pointed document" or falls into the camp of "neutral, objective analysis of agency regulations."
See Delaney, Migdail & Young, 826 F.2d at 127.  It is easy to imagine a memo that considers
whether a court, applying the appropriate standard of deference, is likely to uphold some
proposed agency interpretation.  Record 2, however, is not that hypothetical memo.  Instead, this
memo seeks the best interpretation of the regulation at issue, with no hint that the decision was
influenced by litigation, let alone that the memo was written "because of" litigation.  See In re

Sealed Case, 146 F.3d at 884.  The memo, indeed, states that it "supersedes" a previous memo to the contrary – indicating that it is a legal opinion meant to bind the agency, not a memo plotting litigation strategy.  Work-product privilege thus cannot shield Record 2 either.

### 3. *Attorney-Client Privilege*

"The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services.  The privilege also protects communications from attorneys to their clients if the communications rest on confidential information obtained from the client."  Tax Analysts, 117 F.3d at 618 (citation and internal quotation marks omitted).  For the Government, "the 'client' may be the agency and the attorney may be an agency lawyer."  Id.

The Vaughn index asserts the attorney-client privilege only as to Record 1, the PowerPoint slides that the Office of the Chief Counsel used to train USCIS employees about interacting with private attorneys.  Because these slides are a communication from attorney to client (here, USCIS), they are confidential only insofar as they rest on confidential information obtained from the client.  See id.  USCIS offers no explanation of what confidential client communications might underlie these slides, and the slides themselves do not hint at underpinning confidentialities.  Nor should they.  The slides were used for general trainings by USCIS lawyers, and such generally applicable legal advice will rest on none of the factual particularities conveyed in a typical confidential communication by a client.  Because USCIS has not shown that the slides rest on its own confidential communications in the role of a client asking for legal advice, attorney-client privilege does not apply here.  Therefore, none of the asserted privileges cover Record 1, and it, too, must be turned over.

**IV.     Conclusion**

For the aforementioned reasons, the Court will grant Defendants' Motion to Dismiss and for Summary Judgment in part and deny it in part.  The Complaint's second cause of action will be dismissed as moot.  The portions of the Complaint relating to released records will also be dismissed as moot.  The Court will deny summary judgment as to the adequacy of Defendants' search; instead, USCIS must submit a new affidavit to demonstrate the search's adequacy.  The Court will also deny summary judgment as to Defendants' withholdings under Exemption 5 for (using the numbering of records on pages 15-18 of Plaintiff's Opposition Brief): Records 1, 2, 3, 5, 6, 8, 12, and 15 in full; FOIA response pages 1904-06 of Record 10, except for the first two e-mails on page 1904; and Record 13 in full, except for the internal meeting minutes. Defendants must make all of those records and portions of records available to Plaintiff.  The Court will grant summary judgment to Defendants as to other withholdings under Exemption 5 and all withholdings under Exemption 6.  A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  November 27, 2012